**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

**ALPHONSO DUNN,**

**Plaintiff,**

**v.**

**JAKE PARKER and CHRONICLE**
**BOOKS, LLC,**
       **Defendants.**

Civ. No. 21-cv-17351 (KM) (LDW)

**OPINION**

**KEVIN MCNULTY, U.S.D.J.:**

Alphonso Dunn is the author of two copyrighted books of instruction in drawing. Claiming that Jake Parker's drawing instructional book titled *Inktober All Year Long* infringes his copyright, Dunn sues Parker and his publisher, Chronicle Books, LLC. Defendants move separately to dismiss for lack of personal jurisdiction. (DE 8, 19.)[1] Dunn opposes the motions and requests jurisdictional discovery. (DE 13.) For the following reasons, the motion of defendant Chronicle Books to dismiss the complaint (DE 8) is **DENIED** and Parker's motion to dismiss (DE 19) is **GRANTED** without prejudice. Dunn's request for jurisdictional discovery regarding Parker's contacts with New Jersey is **DENIED**.

I.   **BACKGROUND**

Alphonso Dunn and Jake Parker are drawing instructors, both with substantial followings on social media. (Compl. ¶ 11–12.) In 2015 Dunn published *Pen & Ink Drawing: A Simple Guide* and in 2018 he published *Pen & Ink Drawing Workbook*, instructional books that aim to teach the reader how to

---

[1]    Certain citations to the record are abbreviated as follows:

DE = docket entry

Compl. = Complaint (DE 1)

draw. Their copyrights are registered with the United States copyright office. (*Id.* ¶ 3, 21–25.) In 2020, Dunn learned that Parker had published a book titled *Inktober All Year Long*,[2] which Dunn claims infringes the protectable elements of his own books. (*Id.* ¶ 27–43.) For example, Dunn's complaint compares two pages from his *Pen and Ink Drawing: A Simple Guide* with the subject headings "Unconventional Tools" and "Additional Supplies" with two pages from *Inktober All Year Long* that have the same subject headings and describe the same drawing supplies, including the same unconventional drawing tools. (*Id.* ¶ 34–35.) The complaint cites five other specific examples of pages from *Inktober All Year Long* that Dunn claims are cribbed from Dunn's own works. Dunn claims generally that the similarities between the works "are numerous and far-reaching, ranging from overarching similarities in the books' overall layouts and structures to near-verbatim lifting of phrases, exercises, and illustrated elements from Dunn's books." (*Id.* ¶ 37–43.) After Dunn raised an outcry about the alleged plagiarism on social media, defendant Chronicle Books delayed the release of the book. Nevertheless, says Dunn, Chronicle continued to offer the book for sale to consumers through third party websites such as Amazon.com. (*Id.* ¶ 48–57.) Dunn brings a single claim of copyright infringement against both defendants under 17 U.S.C. §§ 106, 501. (*Id.* ¶ 58–63.)

Dunn filed this action on September 22, 2021. (DE 1.) Chronicle Books filed its motion to dismiss for lack of personal jurisdiction on December 15, 2021 (DE 8) and Dunn filed a brief in opposition and certification on January 4, 2022 (DE 13, 14). Chronicle Books did not file a reply. Jake Parker filed his motion to dismiss for lack of personal jurisdiction on March 17, 2022. (DE 19.) Dunn filed a brief in opposition (DE 21) and Parker filed a reply (DE 26). Both motions are thus fully briefed and ripe for decision.

---

[2] "Inktober" is an annual drawing challenge, which Parker claims to have created, where participants are intended to draw every day during the month of October. *See* www.inktober.com

## II.    STANDARD OF REVIEW

On a Rule 12(b)(2) motion, the plaintiff bears the burden of establishing sufficient facts to show that jurisdiction exists. *Marten v. Godwin*, 499 F.3d 290, 295–96 (3d Cir. 2007). Initially, a court must accept the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff. *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002). Where factual allegations are disputed, however, "the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence." *Patterson v. FBI*, 893 F.2d 595, 603–04 (3d Cir. 1990) (citation omitted). If the district court does not hold an evidentiary hearing, "the plaintiff need only establish a prima facie case of personal jurisdiction." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007).

## III.    DISCUSSION

The only issue relevant at this stage is whether this court may exercise personal jurisdiction over Chronicle Books and Parker. A federal court may exercise personal jurisdiction over a defendant to the extent authorized by state law. Fed. R. Civ. P. 4(k)(1)(A). New Jersey provides for jurisdiction coextensive with constitutional due process. *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004) (citing N.J. Ct. R. 4:4-4). Due process allows for general or specific jurisdiction. *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 129 (3d Cir. 2020). Dunn alleges that this Court has general jurisdiction over Chronicle Books (Opp. at 4–6), but this argument is plainly incorrect, so I focus on specific jurisdiction.[3]

---

[3]    A court may exercise general jurisdiction over a corporation when the corporation has "continuous and systematic contacts with the forum state" such that it is "essentially at home" there. *Chavez v. Dole Food Co.*, 836 F.3d 205, 223 (3d Cir. 2016) (en banc) (cleaned up). A corporation is "at home" at least, and usually only, where it is incorporated or has its principal place of business. *Id.* (citation omitted). Chronicle Books is a limited liability corporation that is incorporated in Delaware and has its principal place of business in California. (Compl. ¶ 6.) Dunn presents no evidence that Chronicle Books is "at home" in New Jersey.

A court has specific jurisdiction when the defendant has sufficient contacts with the forum, and plaintiff's claims "arise out of or relate to" those contacts. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1025, (2021) (citation omitted). To unpack and apply that principle, the Third Circuit uses a three-part test, requiring the plaintiff to show that (1) the defendant purposefully availed itself of the forum, (2) the claims arise out of or relate to at least one of the defendant's activities, and (3) exercising personal jurisdiction comports with fair play and substantial justice. *O'Connor*, 496 F.3d at 317.

When an intentional tort is alleged, as it is in this case, a slight variation from the *O'Connor* three-part test, known as the *Calder* effects test, may apply.[4] *O'Connor*, 496 F.3d at 317 n. 2. This test stems from the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984), which held that a California court had personal jurisdiction over the *National Enquirer* for publishing an article that allegedly defamed a California resident. Even though the *National Enquirer* was headquartered in Florida, the court found that it was subject to suit in California because its "intentional conduct in Florida calculated to cause injury to respondent in California." *Id.* at 791. The *Calder* effects test "can demonstrate a court's jurisdiction over a defendant even when the defendant's contacts with the forum alone [] are far too small to comport with the requirements of due process under our traditional analysis." *Marten*,

---

[4]     I do not propose to settle the status or discuss the mental-state element of copyright infringement. Rather, in the discussion below I assume *arguendo* that for purposes of *Calder* it is an intentional tort. *See Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 108 n.11 (3d Cir. 2004) ("other circuits have recognized copyright infringement as an intentional tort."); *Williams v. Elliott*, No. CV 18-5418, 2020 WL 470308, at *5 n.5 (E.D. Pa. Jan. 29, 2020) ("Though the Third Circuit has yet to establish whether copyright infringement should be analyzed as an intentional tort, other circuit courts have so identified it and, thus, have analyzed personal jurisdiction with respect to copyright claims under the "effects" test from *Calder v. Jones*, 465 U.S 783, 787 (1984)." (citing cases)). *But see* 5 Patry on Copyright § 17:167 (noting tension between jurisdictional analysis and lack of a substantive intent element). Even on that plaintiff-favorable assumption, jurisdiction is lacking. *See infra.*

499 F.3d at 297 (internal quotation marks omitted).[5] Under *Calder*, "an intentional tort directed at the plaintiff and having sufficient impact upon [the plaintiff] in the forum may suffice to enhance otherwise insufficient contacts with the forum such that the 'minimum contacts' prong of the Due Process test is satisfied." *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 260 (3d Cir. 1998). In *IMO Industries*, The Third Circuit applied that *Calder* effects test and held that it requires a plaintiff to show that:

> (1) The defendant committed an intentional tort; (2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; (3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity[.]

155 F.3d at 265–66 (footnote omitted). The *Calder* effects test, as interpreted by the Third Circuit, requires that a defendant's "conduct and connection with the forum State [must be] such that [defendant] should reasonably anticipate being haled into court there." *Marten*, 499 F.3d at 297 (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). In addition, the Supreme Court has clarified that the minimum contacts analysis, even under *Calder* must relate to the "defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there" and that "the plaintiff cannot be the only link between the defendant and the forum." *Walden v. Fiore*, 571 U.S. 277, 285–86 (2014). In short, "[a] forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum." *Id.* at 286.

Here, although the claim of copyright infringement is common to the two defendants, the personal jurisdiction analysis diverges significantly. I first analyze personal jurisdiction related to Chronicle Books and find that

---

[5]     Of course, if the plaintiff can demonstrate that the defendant has sufficient contacts with the state under the *O'Connor* test, that is sufficient to exercise personal jurisdiction regardless of the *Calder* effects test analysis.

Chronicle has sufficient minimum contacts with New Jersey to render it subject to this Court's personal jurisdiction. Next, I find that Dunn has not alleged that Jake Parker has any significant contacts with New Jersey; the mere fact that Parker allegedly infringed a copyright held by a resident of this state is not sufficient to subject him to suit here.

### A. Chronicle Books

Chronicle Books is a book publisher based in San Francisco, California. (Compl. ¶ 6.) It is proper for this Court to exercise personal jurisdiction over Chronicle Books only if (1) the defendant purposefully availed itself of the forum, (2) the claims arise out of or relate to at least one of the defendant's in-state activities, and (3) exercising personal jurisdiction comports with fair play and substantial justice. *O'Connor*, 496 F.3d at 317. Dunn has properly alleged that all three factors support the exercise of personal jurisdiction over Chronicle Books.

*Purposeful availment*: Chronicle Books has purposefully availed itself of the privilege of doing business in New Jersey in several ways. First, it maintains an interactive website where consumers from New Jersey can purchase books for shipment to their homes, and therefore conducts business in New Jersey. *Gourmet Video, Inc. v. Alpha Blue Archives, Inc.*, 2008 WL 4755350, at *3 (D.N.J. Oct. 29, 2008) ("Personal jurisdiction is properly exercised over a defendant using the Internet to conduct business in the forum state." (citing *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 452 (3d Cir. 2003); *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997))).

Second, Dunn has provided evidence that Chronicle Books employs a wholesale sales representative who covers New Jersey. (DE 14, Exs. G, H.) This evidence lends additional plausibility to the allegation that Chronicle Books purposefully does business, specifically wholesale business, in New Jersey.[6]

---

[6]    Because Chronicle Books did not file a reply brief, it did not address the arguments put forward in Dunn's brief and certification in opposition. (DE 13, 14.)

*See Endless Pools, Inc. v. Wave Tec Pools, Inc.*, 362 F. Supp. 2d 578, 583 (E.D. Pa. 2005) (finding that hiring a sales representative to solicit business in Pennsylvania was sufficient to establish specific jurisdiction over defendant in that state).

Third, in the copyright context, several courts have held that offering for sale in the state even a single copy of an infringing work can form the basis for personal jurisdiction. *See, e.g.*, *Ed. Musical Latino Americana, S.A. v. Mar Int'l Recs.*, Inc., 829 F. Supp. 62, 64 (S.D.N.Y. 1993) ("Offering one copy of an infringing work for sale in New York, even if there is no actual sale, constitutes commission of a tortious act within the state sufficient to imbue this Court with personal jurisdiction over the infringers.") Here, although it appears that Chronicle Books has removed Parker's work from its website, Dunn has shown that the book was nevertheless still offered for sale through online retailers including Amazon. (DE 14 ¶ 21; DE 14, Ex. B.)

*Claim arising out of in-state contacts*: Next, Dunn's claims arise out of Chronicle Books' activities in New Jersey. Dunn alleges that Chronicle Books offered for sale in New Jersey a work that infringed his copyrights. Thus, Dunn's claim arises out of Chronicle Books' contacts with New Jersey.

*Substantial justice*: Finally, exercising jurisdiction over Chronicle Books comports with fair play and substantial justice. Factors to consider in this inquiry include "the burden on the defendant," "the forum State's interest in adjudicating the dispute," "the plaintiff's interest in obtaining convenient and effective relief," and the "shared interest of the several States in furthering fundamental substantive social policies." *World-Wide Volkswagen*, 444 U.S. at 292 (1980); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985). Here, because Chronicle Books has its principal place of business in California, the burden of defending this case in New Jersey is undoubtedly significant. Because Chronicle Books sells its products nationwide both retail and wholesale, however, it should have anticipated the possibility of being haled into court in New Jersey. *Vetrotex Certainteed Corp. v. Consol. Fiber Glass*

*Prods. Co.*, 75 F.3d 147, 151 (3d Cir. 1996) (quoting *World-Wide Volkswagen*, 444 U.S. at 297). In addition, New Jersey and the plaintiff both have a strong interest in adjudicating this dispute in New Jersey. Dunn is a citizen of this state and has allegedly suffered harm by the infringement of his copyright by defendants. Finally, intellectual property law, including copyright, is a fundamental and centralized social policy that deserves to be vigorously enforced within the limits of due process. I therefore find that this court may exercise personal jurisdiction over Chronicle Books, and I thus deny its motion to dismiss.

*Alternative application for transfer of venue*: In the alternative, Chronicle Books argues that the case should be transferred to the United States District Court for the Northern District of California because New Jersey is a *forum non conveniens* for the parties. (DE 8 at 5.) This argument fails. When a plaintiff brings an action in a court with jurisdiction, as plaintiff has done here, "a plaintiff's choice of forum should rarely be disturbed." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981); *Rappoport v. Steven Spielberg, Inc.*, 16 F. Supp. 2d 481, 499 (D.N.J. 1998). Dismissal under *forum non conveniens* is appropriate only when the chosen forum would "establish ... oppressiveness and vexation to a defendant ... out of all proportion to plaintiff's convenience." *Piper*, 454 U.S. at 241. Here, Chronicle Books makes no argument for transfer to California beyond its understandable preference to defend this suit at home.[7] It is inappropriate, then, for me to disturb Dunn's choice of his home forum without good cause.

### B. Jake Parker

I reach the opposite conclusion as to defendant Jake Parker. Dunn has not alleged any facts to demonstrate that Parker has had more than incidental contact with New Jersey. Parker is domiciled in Arizona. (Compl. ¶ 4). Dunn's

---

[7] Although Chronicle Books claims that much of the relevant evidence in this case is located in California (DE 8 at 6), it seems just as likely that a great deal of the evidence relevant to infringement may be held by Jake Parker in Arizona.

certification provides one fact connecting Parker to New Jersey: an October 2021 "Inktober® Community Art Project" that took place at the 1978 Art Center in Maplewood, New Jersey. (DE 22, Ex. I.) The advertisement for the event that Dunn includes in his certification states specifically that the project was "being produced with the permission of Jake Parker and the Inktober team. Thanks Jake!" (*Id.*) There is no evidence that Parker himself was present at the event, helped organize it, or participated in it in any way.

This Maplewood event is not sufficient to establish that Parker has sufficient minimum contacts with New Jersey in relation to his allegedly infringing book, *Inktober All Year Long*. To establish specific jurisdiction over the defendant, the plaintiff's claims must "arise out of or relate to" the defendants' contacts with the state. *Ford Motor Co.*, 141 S. Ct. at 1025. Assuming that Parker granted permission to the Maplewood festival to use the name Inktober, that contact is not directly related to any alleged act of infringement or even to the allegedly infringing book, *Inktober All Year Long*. To be clear, Dunn does not use and claims no rights in the name "Inktober"; his claim is that Parker's book copies the wording and illustrations of Dunn's books. What is more, Parker's level of involvement in the Maplewood event is not so much as suggested. At most, the allegation seems to be that he permitted the festival to use the name "Inktober" in its title ("Thanks Jake!"). The existence of the Maplewood event, therefore, is not sufficient to establish personal jurisdiction over Parker.

Dunn has an alternative theory of personal jurisdiction over Parker. Dunn argues that "Parker's agency relationship with Chronicle provides a basis for imputing forum contacts by Chronicle to Parker." (DE 21 at 4.) Dunn, however, does not provide any evidence to demonstrate that Chronicle Books was Parker's agent. Clearly, Chronicle Books and Parker had some sort of contractual relationship for the publication of *Inktober All Year Long* but the

9

existence of a contractual relationship does not imply an agency relationship.[8] Without facts demonstrating an agency relationship this argument must fail.

Although Dunn does not specifically argue that personal jurisdiction over Parker is appropriate under the *Calder* effects test, I briefly discuss that theory for completeness. *See* p.4 n.4, *supra*. Although Dunn clearly felt the brunt of the harm of Parker's alleged infringement in New Jersey, Dunn's case for personal jurisdiction under *Calder* fails on its third element: Dunn has not shown that Parker "expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity." *IMO Industries*, 155 F.3d at 265–66.  In *IMO Industries*, the Third Circuit expanded on this third factor of the *Calder* effects test and stated that it requires that a plaintiff: (1) "show that the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum," and (2) "point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum." *Id.*; *see also Vizant Techs., LLC v. Whitchurch*, 97 F.Supp.3d 618, 632 (E.D. Pa. 2015) (finding the third prong met when "defendants not only knew that their conduct would cause harm to an entity located in [the forum], but also engaged in that conduct intentionally, with the goal of causing said harm"). Dunn points to no specific activity that indicates that Parker targeted his actions at *New Jersey*, as opposed to Dunn himself. The Supreme Court's holding in *Walden* makes clear that the defendant's contacts must be with the forum itself, not merely with a plaintiff who resides in the forum. *Walden*, 571 U.S. at 285–86. Here, at best, Dunn has alleged that Parker committed an act of infringement against a New Jersey copyright holder, but has not demonstrated that Parker has taken any action whatsoever to target New Jersey itself. I therefore grant Parker's motion to dismiss. (DE 19.)

---

[8]     Most obviously, if Parker is the principal and Chronicle Books is the agent, that would imply that Chronicle Books was under Parker's control. Dunn provides no facts to demonstrate that Chronicle Books was under Parker's control. Restatement (Third) Of Agency § 1.01 (2006).

Finally, I find that Dunn has not met his burden to obtain jurisdictional discovery regarding Parker. A grant of jurisdictional discovery lies within a district court's discretion, guided as always by the relevant legal standards. *SoftwareArt Corp. v. Satyajit Gopalakrishnan*, 2008 WL 2876395, at *3 (D.N.J. July 22, 2008) (citing *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir. 1997)). I have given Dunn's allegations and evidence the benefit of a plaintiff-favorable interpretation, but they contain no suggestion that further inquiry will be fruitful. Specifically, I find that the allegations and evidence do not "suggest with reasonable particularity the possible existence of the requisite contacts" between Parker and the forum State of New Jersey. I therefore deny plaintiff's request to put Parker to the burden of jurisdictional discovery. *Toys "R" Us*, 318 F.3d at 456; *see also Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 781 (3d Cir. 2018).

The dismissal is without prejudice. Dunn is free to amend his complaint to remedy the defects identified here, or to refile his complaint in another forum state, such as Arizona, where Parker is subject to jurisdiction.

## IV.     CONCLUSION

For the reasons set forth above, Chronicle Books' motion to dismiss (DE 8) is **DENIED** and Jake Parker's motion to dismiss (DE 19) is **GRANTED** without prejudice as to amendment. A separate order will issue.

Dated: May 17, 2022

/s/ Kevin McNulty

_____

**Hon. Kevin McNulty**
**United States District Judge**